UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RITA VARGAS,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY<br><br>      Defendant. | Civil Action No. 2:12-cv-03563-SDW<br><br><br>**OPINION**<br><br><br>July 17, 2013 |

**Wigenton, District Judge.**

Before this Court is plaintiff Rita B. Vargas' ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security (the "Commissioner"), with respect to Administrative Law Judge Kenneth G. Levin's ("ALJ Levin") denial of Plaintiff's claim for Supplemental Security Income ("SSI") under 42 U.S.C. § 405(g). The Commissioner seeks judgment pursuant to Local Civil Rule 9.1, affirming the final decision that Plaintiff is not entitled to SSI benefits under the Social Security Act ("Act").

This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(g). Venue is proper pursuant to 28 U.S.C §1391(b).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth, this Court **REMANDS** the ALJ's decision ("ALJ's Decision") issued on April 2, 2010.

1

**FACTUAL AND PROCEDURAL HISTORY**

**I. Background and Employment History**

Plaintiff was born on May 10, 1963. (R. at 26.) Plaintiff is 5 feet 6 inches tall, and weighs 170 pounds. (*Id.* at 26, 95.) Plaintiff has a G.E.D. and three college credits. Plaintiff's work history shows that she has done little paid work. (*Id.*) Plaintiff last worked as a waitress in 2005, off the books for about six months. (*Id.* at 26, 93-94.)

On May 28, 2008, Plaintiff filed an application for SSI benefits alleging that she has been unable to work since October 1, 2006 because of her asthma, liver disease, hypertension, low back pain, and left shoulder pain. (R. at 23, 180.) The application was initially denied on August 13, 2008. (*Id.* at 23, 33.) Subsequently, on October 2, 2008, Plaintiff filed a written request for a hearing in front of an administrative law judge ("ALJ"). (*Id.* at 23, 33.)

On March 24, 2010, a hearing was conducted in front of ALJ Levin. (*Id.* at 23, 37, 75.) On April 2, 2010, ALJ Levin denied Plaintiff's application and issued the ALJ's Decision. (*Id.* at 23-33.) Thereafter, Plaintiff requested review of the ALJ's Decision by the Appeals Counsel. (R. at 17.) On April 20, 2010, the Appeals Counsel denied Plaintiff's request for review. (R. at 1-3.)[1] On November 13, 2012, Plaintiff filed an appeal with this Court challenging the denial of her requests for SSI benefits. (*See* Compl.)

**II. Medical History**

On July 30, 2008, Plaintiff consulted Anita Shulman, M.D. ("Dr. Shulman") for a physical examination. (R. at 28.) Dr. Shulman noted that an x-ray of Plaintiff's lumbosacral spine showed degenerative disc disease at L4/5 and L5/S1, and to a lesser extent at L3/4. (*Id.*) Dr. Shulman found that Plaintiff could do sedentary and light, but not heavy exertion. (*Id.*)

---

[1] The Appeals Council allowed Plaintiff to reapply for SSI benefits on June 1, 2010. (Pl.'s Br. 9.) On August 24, 2010, Administrative Law Judge Sheena Barr, issued a decision finding Plaintiff to be disabled as of the date of her SSI reapplication, June 1, 2010. *Id.*

On July 29, 2008, Plaintiff underwent a psychiatric consultation with Renee Ravid, M.D. ("Dr. Ravid"). (*Id.* at 28.) Dr. Ravid diagnosed Plaintiff with alcohol dependence and several other conditions offered only as "rule out" diagnosis, i.e. panic disorder, substance-induced mood disorder and personality disorder not otherwise specified ("NOS"). (*Id.*)

Plaintiff's records indicate that she had little to no medical care from 2008 to mid-2009. (R. at 27.) On March 31, 2009, she started receiving regular medical care from nurses at NYU College of Nursing Faculty Practice ("NYU'). (*Id.*) Plaintiff later received specialized medical care at Bellevue Hospital Center ("Bellevue") between June and September of 2009, and most recently at Beth Israel Medical Center ("BIMC"). (*Id.*)

Plaintiff was homeless and a "long-term alcoholic" until 2009. (*Id.*) Despite claims of cirrhosis and a long history of excess alcohol consumption, Plaintiff did not have signs of serious liver disease and her liver function blood tests were normal. (*Id.*)

On July 2, 2009, Plaintiff began mental health treatment at Fifth Avenue Center for Counseling & Psychotherapy.[2] (*Id.* at 28.) At that time she was diagnosed with depressive disorder NOS and alcohol dependence, with a global assessment of function ("GAF") score of 55. (*Id. at 28,289.*) On August 7, 2009, Plaintiff's mental disorder was upgraded to major depressive disorder, recurrent, and moderate. (*Id.* at 294.)

On July 15, 2009, Plaintiff had an x-ray of her left shoulder, which showed moderate arthrosis at the acromioclavicular ("AC") joint of her shoulder.[3] (R. at 27.) On September 22, 2009, Plaintiff began seeing Rehabilitation Specialist Zinovy Meyler, D.O. ("Dr. Meyler") at

---

[2] Referred to in the ALJ's Decision as the "Realization Center." (*Id.* at 28.)
[3] Referred to as the ACM joint in the ALJ's Decision.

3

BIMC, for her shoulder and underwent physical therapy.[4] (*Id.*) At that time, Plaintiff was diagnosed with "Frozen Shoulder"[5] and bicipital tendonitis at BIMC. (*Id.* at 27, 335.)

Plaintiff's complaints of low back pain began in July of 2009. (R. at 27.) On September 23, 2009, Plaintiff had an x-ray of her lumbosacral spine, which showed a slight retrolisthesis of L4 on L5, and advanced degenerative disc disease at the L4/5 and L5/S1 levels. (*Id.*) On October 13, 2009, Plaintiff went to the BIMC emergency room complaining of low back pain shooting down her leg. (*Id.*) At that time, Plaintiff was diagnosed with sciatica, and her straight leg raising on her left side was positive. (*Id.*)

On November 13, 2009, Plaintiff saw Dr. Meyler who examined Plaintiff's back and leg. (*Id.* at 28.) His only positive finding was limitation of motion, with a negative straight leg raising test. (*Id.*) Dr. Meyler prescribed Plaintiff physical therapy and Flexeril. (*Id.*)

On February 11, 2010, Plaintiff had an MRI of her lumbosacral spine, which showed degenerative disc disease at L3/4 and L4/5, and a disc bulge at L3/4 with facet hypertrophy causing no stenosis. (R. at 28.) At L4/5 there was a small disc herniation and facet hypertrophy without stenosis. (*Id.*) At L5/S1 there was a larger degenerative bony ridge to the left which, with facet and ligamentous hypertrophy, resulted in mild left foramina stenosis. (*Id.*)

**Plaintiff's Testimony**

Plaintiff was 45 years old at the time of the hearing before ALJ Levin. (*Id.* at 26.) At the March 24, 2010 hearing, Plaintiff testified that she injured her lower back when she was 22 years old and had pain since. (R. at 25, 29, 78.) Plaintiff complained of pain in the middle of her lower back that radiates down the back of her left leg to all five toes, which causes numbness and tingling. (*Id.* at 25, 78.) Plaintiff testified that physical therapy she had undergone and the

---
[4] Plaintiff testified that she stopped receiving physical therapy for her shoulder because the therapy aggravated her back. (R. at 80).
[5] "Frozen Shoulder" is also known as adhesive capsulitis.

4

epidural shot she had obtained two weeks prior to the hearing did not help the pain. (*Id.* at 25, 79-80.) Plaintiff claimed that in the morning the pain is so bad that she has to walk around hunched over for thirty to forty-five minutes after getting out of bed and that she cannot walk more than 1 or 1.5 blocks without stopping or stand or sit for more than fifteen minutes. (*Id.* at 25, 26, 80, 83, 96.)

Plaintiff also complained of pain in her left shoulder, which she attributed to bursitis. (*Id.* at 25, 80.) She described the back pain as "stabbing," which makes writing "difficult," as she is left-handed. (*Id.* at 25, 80.) Plaintiff indicated that she can lift a two liter bottle of soda, but was not sure if she could carry it. (*Id.* at 26, 88.) Plaintiff takes Vicodin and Tramodol for both pain complaints described above. (*Id.* at 25, 79.)

Plaintiff testified that she has asthma and chronic obstructive pulmonary disease ("COPD"), which makes her short of breath. (*Id.* at 26, 77.) Plaintiff takes Flovent, Albuterol, and Claritin for her asthma and COPD. (*Id.* at 26.)

Plaintiff testified that she suffers from depression, feeling disinterested, crying spells, irritability and nastiness, difficulty in crowds, and being short-tempered. (*Id.* at 26, 81, 91.) Plaintiff sees a therapist once a week and takes Lexapro for her depression (20 milligrams). (*Id.* at 26, 81.) Plaintiff also suffers from insomnia, for which she takes Trazadone; however, she testified that it does not provide any help. (*Id.* at 26, 82.)

**Medical Testimony**

### I. Dr. Plotz

On March 24, 2010, Dr. Plotz testified that while Dr. Meyler used the phrase "frozen shoulder" to describe Plaintiff's left shoulder condition, use of that term was not warranted. (R. at 29, 105-06, 335-37.) Dr. Plotz noted that an x-ray of Plaintiff's left shoulder did yield some

osteoarthritis of her AC joint. (*Id.* at 29, 105.) With regard to Plaintiff's back, Dr. Plotz noted Plaintiff has no evidence of nerve root compression to meet the listings under 1.04, despite radiographic evidence of disc disease and arthritic changes at L4/5 and L5/S1, with some resulting foraminal narrowing at L5/S1. (*Id.* at 29, 101.) Dr. Plotz testified that a person with her findings would be expected to be limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently, as well as being limited to standing and/or walking for a total of six of eight hours in a work day, at customary intervals. (*Id.* at 29, 100.) Dr. Plotz noted that Plaintiff should have no limits on her ability to sit. (*Id.* at 29, 100.) Due to Plaintiff's shoulder problems, Dr. Plotz noted that he would further limit Plaintiff's expected capacities to lifting/carrying no more than 10 pounds, and to avoid overhead reaching with her left upper extremity. (*Id.* at 29, 100.)

**II. Dr. Grand**

On March 24, 2010, Dr. Grand testified that Plaintiff's "only proven medically-determinable mental impairment until June of 2009 was alcoholism," which was now in full remission. (*Id.* at 29, 108.) Dr. Grant noted that Plaintiff had a good response to treatment with therapy and medication for her major depressive disorder, experiencing no episodes of deterioration or decomposition. (*Id.* at 29, 108.)

**LEGAL STANDARD**

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir.2000); *see also Poulas v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007). However, the court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is limited to determining whether those findings are supported by "substantial evidence." *Hartranft v. Apfel*, 204 F.3d

358, 360 (3d Cir.1999). Pursuant to 42 U.S.C. § 405(g), factual findings which are supported by substantial evidence must be upheld. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir.2000) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.")

Substantial evidence "does not mean a large considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1988)). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.2001). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey v. Comm'r of Soc. Sec.*, F. App'x. 613, 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)). In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all other evidence in the record." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981). It must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71. S.Ct. 456, 95 L.Ed. 456 (1971). A single piece of evidence is not substantial evidence if the commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993). The commissioner must indicate which evidence was accepted, which evidence was rejected, and the reason for rejecting

7

certain evidence. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 (3d Cir.2008); *Cotter*, 642 F.2d at 706-07. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir.1979).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky*, 606 F.2d at 407 (quoting *Saldana v. Weinberger*, 421 F.Supp. 1127, 1131 (E.D.Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

**DISCUSSION**

An individual will be considered disabled under the Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or which can be expected to last" continuously for at least twelve months. 42 U.S.C.A. § 423(d)(1)(A). The physical or mental impairment must be so severe as to render the individual "not only unable to do [her] previous work but [unable], considering [her] age, education, and work experience, [to] engage in any substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A). Subjective complaints of pain alone, cannot be used to conclusively establish disability. 42 U.S.C.A. § 423(d)(5)(A). A claimant must show that the "medical signs and findings" related to his ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, or physiological

abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id.*

The Social Security Commissioner employs a five-step sequential analysis to determine whether an applicant is disabled under the Act. 20 C.F.R. §§ 404.1520, 416.920; *see also Poulas*, 474 F.3d at 91-92. The claimant bears the ultimate burden of establishing steps one through four. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir.2004). Only if the applicant demonstrates that the impairment precludes performing his or her past work does the burden shift to the commissioner, at step five, to demonstrate "that the claimant still retains a residual functional capacity to perform some alternate, substantial, gainful activity present in the national economy." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

On appeal, Plaintiff asserts that the ALJ's Decision should be: 1) reversed because there is substantial evidence in the record to establish entitlement and eligibility for benefits; or 2) remanded, and a new hearing ordered, because it is not based on the substantial evidence. (Pl.'s Br. 8.) The five-step analysis is provided below.

**Step One**

If plaintiff is found to be engaged in substantial gainful activity ("SGA"), the disability claim will be denied. *See Bowen y. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). SGA is work that involves significant physical or mental activities and is done for pay or profit. *See* 20 C.F.R. §§ 404.1572(a)-(b), 416, 972(a)-(b). In the present matter, ALJ Levin determined that Plaintiff had not engaged in SGA since May 28, 2008, the date of the application. (*Id.* at 32.)

9

**Step Two**

In determining step two, the ALJ must consider all symptoms and the extent to which they can reasonably be accepted with objective medical evidence, as well as, other relevant evidence. *See* C.F.R. §§ 404.1529, 416.929. Under the regulations, an impairment or combination of impairments is "severe" if it significantly restricts the plaintiff's physical or mental ability to do "basic work activities."

In the present matter, ALJ Levin determined that Plaintiff has a "severe" combination of degenerative disc and bony disease of her lumbosacral spine, bicipital tendinitis and/or bursitis of her left shoulder since July 2009, and major depressive disorder of a moderate degree since June of 2009. (*Id.* at 32.) ALJ Levin also found that Plaintiff's alcoholism was in full remission since January 2009. (*Id.* at 29.) Despite taking asthma medication, ALJ Levin further concluded that Plaintiff's asthma condition is not a "severe" impairment, particularly as there is no documented instance of exacerbation since she filed her claim. (R. at 31.) ALJ Levin also concluded Plaintiff had not proven or argued that she has a psychiatric condition. (*Id.* at 31.)

**Steps Three, Four, and Five**

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004). When plaintiff's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." *Knepp*, 204 F.3d at 85. The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). The ALJ is required to issue more than just a conclusory statement that a claimant does not meet the listings. *See Fargnoli*, 247 F.3d at 40 (citing *Burnett*, 220 F.3d at 119-20). However, the

relevant case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d. Cir. 2004)).

Here, Plaintiff argues that ALJ Levin's finding at step three did not sufficiently consider the evidence of record regarding "alcohol dementia" or adequately mention or refute contradictory medical evidence (including multiple pathologies on Plaintiff's lumbosacral MRI and clinical observations and treatment). (Pl.'s Br. 9, 32.)

In assessing Plaintiff's impairments, ALJ Levin noted that:

> [An] MRI of Plaintiff's lumbosacral spine "showed degenerative disc disease at L3/4 and L4/5, [that] [t]here was a disc bulge at L3/4 with facet hypertrophy causing no stenosis, [a]t L4/5 [ ] a small disc herniation and facet hypertrophy without stenosis, [and] [a]t L5/S1 [ ] a larger degenerative bony ridge to the left which, with facet and ligamentous hypertrophy, resulted in mild left foraminal stenosis.

(R. at 28.) ALJ Levin determined that Plaintiff did not have an impairment that meets or medically equals the impairment listed in Appendix 1, Subpart P of Regulations No. 4 ("the listings"). (Pl's Br. 32.)

Plaintiff contends that ALJ Levin rejected Dr. Meyer's determinations without adequate medical contradiction and that a treating physician's assessment is entitled to more weight than that of a one-time consultative examiner. (Pl.'s Br. 33-34.) For example, ALJ Levin did not credit Dr. Meyer's conclusions that Plaintiff was only capable occasionally of lifting/carrying up to 10 pounds, not sitting, walking or standing for more than 15-20 minutes, or reaching in any direction with her left hand. (R. at 28.)

Notably, evidence of "alcohol dementia" was not submitted to the Appeals Council and, thus, was not presented to ALJ Levin. 42 U.S.C. § 405(g) ("When a claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner, but only if the evidence is new and material and if there was good cause why it was not previously

presented to the ALJ"); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) ("[E]vidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence.")

Next, Plaintiff argues that ALJ Levin did not properly take into account Plaintiff's subjective complaints of pain. In *Hartranft*, the court held "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir,1992) (holding that the burden is on the plaintiff to prove through medical evidence that he is unable to do work). Accordingly, the Commissioner has discretion to evaluate the credibility of the plaintiff's testimony about pain and other symptoms and render a judgment about the true extent of plaintiff's symptomatology based on the medical and non-medical evidence of record. *Williams*, 970 F.2d at 1186-87; *see also*, *LaCorte*, 678 F.Supp at 84; *Brown v. Schweiker*, 562 F.Supp. 284, 287 (E.D.Pa.1983).

In this instance, ALJ Levin found that Plaintiff behaved without any signs of pain or depression during the March 24, 2010 hearing and that Plaintiff did not seek treatment for any complaint of lower back pain until November 2009. (*Id.* at 26, 29-30.) Further, ALJ Levin found that Plaintiff's shoulder had never shown any positive findings other than limitations in motion and strength secondary to the complained of pain and that Plaintiff had no weakness or atrophy and walked with a normal gait. (*Id.* at 27, 30.) ALJ Levin noted that while Plaintiff did request to stand after about 40 minutes (double the time she indicated she could manage), she showed no signs of difficulty. (*Id.* at 26, 30, 103.) Furthermore, ALJ Levin noted that Plaintiff does a considerable amount of commuting and household chores. (*Id.* at 30, 87-89.)

ALJ Levin determined that "psychiatrically, alcoholism was quite plainly Plaintiff's problem until at least the beginning of 2009."[6] (*Id.* at 30.) He stated that because alcoholism is "not a cognizable impairment under Social Security rules, [ ] there is [ ] no persuasive evidence of her having any cognizable psychiatric limitations until mid-2009." (*Id.* at 30.) ALJ Levin relied on Dr. Grand's determination that Plaintiff did not demonstrate any "severe" mental impairment apart from the one attributable to substance abuse (alcoholism). (*Id.* at 30.) ALJ Levin further states that he "did not find [Plaintiff] to be a particularly credible witness, [] [as] several times [she] described her level of symptoms and restrictions as greatly exceeding anything her records supported." (*Id.* at 30.)

*Residual Functional Capacity*

If a claimant's impairment does not meet or equal a listed impairment, the ALJ must determine plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step of the analysis. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC will then be used in the fourth step to determine whether the plaintiff can perform the requirements of his past relevant work. *See id.* In determining plaintiff's RFC, the ALJ must consider all of the plaintiff's impairments, even the ones that are deemed not severe. *See* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. Whenever statements about intensity, persistence, and limiting effects of plaintiff's symptoms are not corroborated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record. *Id.*

Here, ALJ Levin determined that from May 28, 2008 through May 31, 2009, Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. 416.967(b). (*Id.* at 32.) Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. 416.967(b). To be considered capable of

---

[6] The ALJ found that Plaintiff implied that she used to drink to excess. (*Id.* at 27.)

13

performing a full or wide range of light work, plaintiff must have the ability to do substantially all of these activities. *Id.* ALJ Levin noted Dr. Plotz's findings and agreed that Plaintiff was able to sit, stand, or walk for up to 6 hours over the course of an 8-hour workday, and could lift/carry/push/pull objects weighing up to 10 pounds frequently and 20 pounds occasionally but with nonexertional limitations. (R. at 30.)

In making his finding, ALJ Levin considered several medical assessments, including Dr. Meyler's, Plaintiff's treating physician. (*Id.* at 28.) However, ALJ Levin disagreed with the Dr. Meyler's rating and agreed with the medical expert, Dr. Plotz, that "it is absurd to rate Plaintiff as incapable of a **total** of any more than 15-20 minutes worth of either sitting, standing or walking in an eight-hour work day." (*Id.* at 28, 429, 432 (emphasis in original).) As to Plaintiff's shoulder, the ALJ agreed with Dr. Plotz's assessment and concluded that "though [he] agree[s] that it imposes some mild additional restrictions, the relative mildness of [Plaintiff's] clinical and radiographic findings about her shoulder makes [his] rating make perfect sense." (*Id.* at 30.) Moreover, ALJ Levin noted the difficulty in disagreeing with Dr. Grand's classification of Plaintiff's psychiatric condition being at the moderate level because "Plaintiff's own psychiatric clinic incorporated Dr. Grand's assessment of severity directly into Plaintiff's diagnosis." (*Id.* at 30-31.) ALJ Levin found "Dr. Grand's more detailed assessments to be fully justified by the treating records themselves." (*Id.* at 31.)

Here, although ALJ Levin noted the objective findings of the lumbosacral MRI and found "the medical experts' conclusions to be well supported by the evidence," he disregarded some in favor of Dr. Plotz's assessment without adequate explanation. (*Id.* at 29.) ALJ Levin also did not provide a clear explanation of his determination of Plaintiff's ability to do "low stress" jobs.

14

An "ALJ must analyze all of the evidence in the record and provide adequate explanations for disregarding or rejecting evidence." *See Cotter v. Harris*, 642 F.2d 700 (3d Cir.1981).

*Fourth and Fifth Step Analysis*

If plaintiff does not have the RFC to perform any past relevant work, the analysis proceeds to the fifth step. 20 C.F.R. §§ 404.1560, 416.960. Here, ALJ Levin determined that Plaintiff has no "past relevant work," pursuant to 20 C.F.R. §§ 404.1565, 416.965.[7] (*Id.* at 32.)

At the fifth, and final, step of the evaluation process the ALJ must determine whether the plaintiff is able to perform any other work, taking into consideration their RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines ("MVG"), 20 C.F.R. Part 404, Subpart P, Appendix 2. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). If plaintiff is able to do other work then she is not disabled. *Id.* The SSA is responsible for providing evidence to demonstrate that other work exists in significant numbers in the national economy that plaintiff can perform. *See* 20 C.F.R. §§ 404.1512(g), 416.912(g); *see also* 20 C.F.R. §§ 404.1560(c), 416.960(c).

The ALJ must first consider whether plaintiff has exertional and/or nonexertional limitations. *See* 20 C.F.R. §§ 404.1569(a), 416.969(a).[8] If the limitations are solely exertional, the ALJ can use medical vocational guidelines to determine whether plaintiff can perform any other job in the national economy. *See* 20 C.F.R. pt. 404, Subpart P, app. 2. However, if there are both exertional and nonexertional limitations, the ALJ cannot solely depend on the guidelines to determine whether there are jobs in the national economy that Plaintiff can perform. *See*

---

[7] The ALJ noted that Plaintiff had a nearly non-existent work record. (*Id.* at 30.) Additionally, the ALJ noted that despite Plaintiff's reference to having worked, her history shows that she has almost never officially done "paid work." (*Id.* at 26.) The ALJ noted that Plaintiff had only minimal posted work credits – all in 1994. (*Id.*) Plaintiff last worked as a waitress in 2005, but off the books. *Supra* 1.

[8] A limitation is exertional if it affects the Plaintiff's "ability to meet strength demands of [a job]" such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." *See* 20 C.F.R. §§ 404.1569(a), 416.969(a). A limitation is nonexertional if it affects the Plaintiff's "ability to meet the demands of [a job]" other than strength demands. *Id.*

*Sykes v. Apfel*, 228 F.3d 259, 269 (3d Cir. 2000). Further, hypothetical questions to a vocational expert must reflect all of the claimant's impairments that are supported by the record. (Pl.'s Br. 21); *Ramirez v. Barnhart*, 372 F.3d 546 (3d Circ. 2004).

In the instant matter, Plaintiff argues that the ALJ inadequately conveyed credibly established limitations to the vocational expert through his "vague," "uncertain," and "low stress" hypothetical. (*See* Pl.'s Br. 8-40.) ALJ Levin posed two different hypothetical questions to the vocational expert Mr. Pasternak ("VE") at the hearing. First, ALJ Levin asked the VE to assume a person of Plaintiff's age, education, and lack of work experience, who was limited to work activities that are simple and routine, low in stress, and involve no more than low amounts of interaction with other people. (*Id.* at 31.) Then, ALJ Levin inquired about jobs at the light and sedentary levels and included the non-exertional restrictions.[9] (*Id.*) The VE responded by testifying that persons having to engage in work activities that are simple and routine, low in stress, and involve no more than low amounts of interaction with other people, could do jobs such as: 1) hand packager at the light level; 2) various machine operator jobs; 3) house cleaner; and the sedentary jobs of: 4) sedentary assembly jobs; and 5) sedentary machine tending jobs. (*Id.* at 31.)

Second, ALJ Levin asked the VE to consider the same assumptions, but to reduce the maximum lifting/carrying to 10 pounds, and to add a restriction to no overhead reaching or repetitive pushing/pulling with the left (dominant) upper extremity. The VE responded that the hand packager jobs would be the only ones eliminated. (*Id.* at 31.)

ALJ Levin concluded that from the application date until on or about July 1, 2009, Plaintiff retained the capacity to perform each of the above-mentioned jobs and thereafter she

---

[9] The ALJ noted that his inquiry included the non-exertional restrictions even though he believed they did not actually exist until June 2009. (*Id.* at 31.)

remained capable of doing all but the first of the aforementioned jobs.[10] (*Id.* at 31-32.) Therefore, ALJ Levin concluded that Plaintiff was "not disabled." (*Id.* at 31-32.)

Plaintiff argues that ALJ Levin's construction limiting Plaintiff to "simple routine," "one-two-step tasks" or "low contact work," is vague and does not adequately convey other "difficulties," including mental limitations and pace issues. As ALJ Levin does not provide an adequate explanation to the meaning of the term "low stress," this Court cannot determine what the ALJ meant by "low stress." Based on the foregoing, this Court will remand for further clarification.

**CONCLUSION**

For the foregoing reasons, this Court **REMANDS** this matter for clarification in accordance with this Opinion.

s/Susan D. Wigenton, U.S.D.J

Orig: Clerk
Cc: Parties

---

[10] The ALJ found Plaintiff's nearly non-existent work record as an indicator of the unlikeliness that her present medical and/or mental health condition was preventing her from working at the time of the hearing. (*Id.* at 30.)